UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 24-CR-179

PEYTON SHIPMAN-ALLEN,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Alexander E. Duros, Assistant United States Attorney, and the defendant, Peyton Shipman-Allen, individually and by attorney Thomas Erickson, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in one count of a 5-count superseding indictment, which alleges violations of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C), and Title 18, United States Code, Section 2(a).

3.    The defendant has read and fully understands the charges contained in the superseding indictment. He fully understands the nature and elements of the crime with which he has been charged, and the those charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

*THE GRAND JURY CHARGES THAT:*

*1. Beginning in approximately January 2023, and continuing until approximately December 2024, in the State and Eastern District of Wisconsin and elsewhere,*

*JAYLEN T. ALLEN,*
*PEYTON T. SHIPMAN-ALLEN, a/k/a "Tim Tim,"*
*TAVIAUN S. LOVE, a/k/a "Lil Tay,"*
*XZAVIER T. NEWSOM, a/k/a "Apollo,"*
*RICKY Q. CHAMBERS, a/k/a "Goldi,"*
*EUGENE L. HERROD,*
*DARIUS D. RICKS, and*
*DEVINIQUE E. MANJARREZ*

*knowingly and intentionally conspired with each other and with persons known and unknown to the grand jury to distribute and possess with the intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II controlled substance.*

2. Before committing the offense charged in this count, defendant Herrod had a final conviction for a serious violent felony, namely, a conviction for robbery with use of force under Wisconsin Statute Section 943.32(1)(a), for which he served more than 12 months' imprisonment.

All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

2

In 2023, agents in Tempe, Arizona seized approximately 120,000 fentanyl pills from a vehicle previously occupied by Peyton Shipman-Allen and Darius Ricks. Shipman-Allen was taken into custody, and the Brown County Drug Task Force began listening to his recorded jail calls, including the following:

> On August 31, 2024, Shipman-Allen called Jaylen Allen. In the call, Shipman-Allen bragged, "I always had Green Bay… on my momma nobody's got more heads than me." Agents are aware that "heads" is slang for drug customers.
>
> On September 26, 2023, Shipman-Allen called Allen, and Allen added Newsom to the call. Shipman-Allen stated, "Jaylen, you're like my protégé. You're underneath me." He added, "who gave you your first ball? Who got you out here? Who taught you how to use a scale?" He also stated, "I'm proud of my whole team."
>
> On October 17, 2023, Shipman-Allen called Jaylen Allen. In the call, Allen described obtaining approximately 30,000 pills from a source of supply and suggested that he split the pills with Newsom, Chambers, and Love. Allen added, "we all in this shit together." On December 30, 2023, Shipman-Allen called Allen and complained that Newsom was purchasing the pills for $1 each. Allen responded, "No bro, we just got 'em for 80," which investigators believe to mean 80 cents.
>
> On December 29, 2023, Shipman-Allen called Newsom. Shipman-Allen coached Newsom regarding negotiating prices of fentanyl pills. He stated, "You've gotta find somebody else bro… Take that trip and just ask around bro, you gonna find better. . . . You've gotta stand on business bro, stop shopping with they asses and just tell they ass, 'man I ain't gonna lie I just bought some for 50 right now.'" Agents believe that Shipman-Allen was telling Newsom to negotiate the price down to 50 cents per pill. Shipman-Allen added, "When we all stick together, ain't nobody can touch us. Nobody can fuck with us. When we stick together, nobody can touch us."
>
> On January 10, 2024, Shipman-Allen called Newsom. He told Newsom that when he gets out, he's going to "go back down there" to negotiate a lower price. Agents believe that Shipman-Allen was referring to Arizona—where he was arrested with approximately 120,000 fentanyl pills—when he referenced going "back down there."

On June 20, 2024, after Shipman-Allen was released from custody, he was with Ricky Chambers during a controlled buy. Specifically, a confidential informant ("CI") purchased approximately 2,000 fentanyl pills from Chambers in exchange for $8,000. During the controlled buy, Chambers was with Shipman-Allen and the deal occurred near Shipman-Allen's residence.

Agents also interviewed numerous individuals who purchased pills from Shipman-Allen. A source of information (SOI #1) had intimate knowledge of the drug

3

trafficking organization. SOI #1 indicated that SOI #1 purchased 1,000 pills (also known as K-packs) from Shipman-Allen on five occasions, totaling approximately 5,000 pills. Another SOI (SOI #2) also had intimate knowledge of the organization. SOI #2 stated that Shipman-Allen was the largest supplier of fentanyl pills, and that he only sold 1,000 pills or more at a time. SOI #2 stated that Shipman-Allen's first shipment was approximately 30,000 pills, and when Shipman-Allen was arrested in Arizona, he planned to purchase approximately 100,000 pills. SOI #2 stated that when Shipman-Allen was arrested, Jaylen Allen took over.

One witness described a time in the summer of 2023 when he purchased 1,000 fentanyl pills from Allen, which Taviaun Love delivered on his behalf. This witness stated that he purchased 1,000 pills from Allen on five separate occasions. This witness further admitted to being a "runner" for Allen, meaning he distributed fentanyl to customers on Allen's behalf. Numerous other witnesses who had intimate knowledge of the drug trafficking organization identified Allen as a fentanyl distributor.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following potential penalties: between 10 years and life imprisonment; a maximum fine of $10 million; between 5 years and a lifetime on supervised release; and a mandatory $100 special assessment.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## PROOF OF DRUG WEIGHT FOR STATUTORY MAXIMUM PENALTY

8. The parties understand and agree that for the penalties in 21 U.S.C. § 841(b)(1)(A) to apply, as provided in paragraph 6 above, the government must prove beyond a reasonable doubt that the offense to which the defendant is pleading guilty involved at least 400 grams of fentanyl. The defendant agrees that the government possesses sufficient, admissible evidence to meet this burden.

4

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiracy to distribute fentanyl, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

<u>First</u>, the conspiracy in the indictment existed; and
<u>Second</u>, the defendant knowingly and intentionally joined the conspiracy with the intent to further its objective.
<u>Further</u>, for the increased penalties to apply, the government must prove that the offense involved 400 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties

5

acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16. The parties acknowledge and understand that the government will recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 12 kilograms but less than 36 kilograms of fentanyl, a Schedule II controlled substance.

## Base Offense Level

17. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 36 under Sentencing Guidelines Manual § 2D1.1(c)(2).

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion

6

recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range, including the length of supervised release and the terms and conditions of the release, the defendant's custodial status pending the sentencing, and any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence of 180 months imprisonment. The parties will recommend that this sentence run concurrently with the defendant's revocation sentence in Brown County case number 16CF401.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

7

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

### Fine

26. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

8

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

9

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

32. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

35. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

### VOLUNTARINESS OF DEFENDANT'S PLEA

36. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 6-23-25

PEYTON SHIPMAN-ALLEN
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 1-23-25

THOMAS ERICKSON
Attorney for Defendant

For the United States of America:

Date: 6/25/2025

RICHARD G. FROHLING
Acting United States Attorney

Date: 6/25/2025

ALEXANDER E. DUROS
Assistant United States Attorney

12